UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

KRISTINE MOORE,

                      Plaintiff,          Case No.: 12-11020
                                          Honorable David M. Lawson
          v.                              Magistrate Judge David R. Grand

MICHAEL ASTRUE,
Commissioner of Social Security,

                      Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 16]

Plaintiff Kristine Moore brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons set forth below, the court finds that the Administrative Law Judge ("ALJ") failed to include certain limitations, imposed by him, in the hypothetical questions he posed to the vocational expert ("VE"). Thus his reliance on the VE's testimony cannot constitute substantial evidence in support of his ultimate decision. Accordingly, the court recommends that the Commissioner's Motion for Summary Judgment [16] be DENIED, Moore's motion [13] be GRANTED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be REVERSED AND REMANDED for further proceedings consistent with this report

and recommendation.

## II.    REPORT

### A.    Procedural History

On July 2, 2010, Moore filed an application for DIB, alleging disability as of June 1, 2008.  (Tr. 142-47).  The claim was denied initially on December 8, 2010.  (Tr. 73-87). Thereafter, Moore filed a timely request for an administrative hearing, which was held on August 15, 2011, before ALJ Jerome Blum.  (Tr. 37-72).  Moore, represented by attorney John Camp, testified, as did VE James Fuller.  (*Id.*).  On October 25, 2011, the ALJ found Moore not disabled.  (Tr. 5-24).  On January 25, 2012, the Appeals Council denied review.  (Tr. 1-4). Moore filed for judicial review of the final decision on March 6, 2012.

### B.    Background

On appeal, Moore appears only to be challenging the ALJ's decision with regard to his evaluation of her mental limitations, not her physical ones.  Therefore, the background and analysis of this Report and Recommendation will focus on her mental conditions and limitations.

#### *1.    Disability Reports*

In an undated disability report, Moore reported that one of the conditions limiting her ability to work was "high anxiety [with] some depression."  (Tr. 156).  She reported that she stopped working due to physical limitations, but also that her medications made her tired "all the time."  (*Id.*).  She reported taking Paxil for her anxiety.  (Tr. 159).  The doctor she listed as treating her for anxiety, Dr. Stanley Poleck, was also treating her for various physical conditions as well.  (Tr. 160-61).  At the end of her report, Moore wrote that she was "not happy about being unable to work" and that she had "tried many different things and the simple point is that my bones aren't getting any better since my hysterectomy."  (Tr. 162).  She further wrote that

2

she "love[d] to work and be around other people but my doctor says that [I] need to concentrate on my body." (*Id.*).

In an August 4, 2010 function report, Moore reported that only physical conditions were preventing her from working, namely back pain, and the majority of her report dealt with limitations from this pain. (Tr. 163-73; 165). She did report needing "emotional" and "spiritual" help to "keep [her] head up." (Tr. 165). She reported going out 4-5 times a week and being able to shop and deal with money. (Tr. 166). She reported watching children on the weekends when she feels well, but no longer participating in other hobbies such as bowling or studying. (Tr. 167). She reported this being "hard for me," as she is "high spirited and energetic." (*Id.*). She reported spending time with others 2-4 times a week, but needing someone to accompany her. (*Id.*). She reported not enjoying visiting her family members because she did not like them "to see me like this." (Tr. 168). On a list of abilities her condition affects, Moore checked that her conditions affect her ability to get along with others. (*Id.*). She reported being able to pay attention "as long as needed," being able to finish what she starts, and being able to follow instructions and get along with supervisors "well." (Tr. 168-69). She also reported not handling stress or changes in her routine well. (Tr. 169). In the "Remarks" section of the report, Moore essentially discussed the effects of her back pain on her life. (Tr. 170-73).

In a third-party function report dated August 4, 2010, Howard Mallory (her spouse), reported that he spends 8-10 hours a day with her and that her conditions "greatly" limit her ability to work. (Tr. 174; 194). She does "very little" on a daily basis, due to her conditions, which he mainly described as back pain. (Tr. 175-77). He reported that Moore spends time talking with others and that she has been doing that "more lately." (Tr. 178). He reported that her conditions affect her ability to complete tasks, but that she has no problem paying attention

3

or following instructions. (Tr. 179). He also reported that Moore has no problem getting along with authority figures, although her ability to handle stress "varies," and she prefers routines. (Tr. 180).

In an undated disability appeals report, Moore reported that her conditions had changed for the worse and that her back pain forced her to be "stable and confined" which caused "more anxiet[y] and de[]pression." (Tr. 188). She reported taking Valium for anxiety in addition to her Paxil, which caused her to be drowsy. (Tr. 190). She did not report any additional limitations based on her mental conditions nor did she report undergoing any tests related to her mental conditions. (Tr. 191). She did report that low blood sugar associated with her diabetes made her tired. (Tr. 192). In a medication update dated August 13, 2011, Moore no longer reported being on Valium. (Tr. 202).

### 2.   *Plaintiff's Testimony*

At the hearing, Moore testified that she had received her GED and had attempted further schooling, but did not receive a degree or license. (Tr. 48). She mainly had been a working supervisor for several commercial cleaning companies, cleaning floors and training subordinates on proper cleaning techniques. (Tr. 48-51). She stopped working at her last position because she could not handle climbing stairs and because her back problem made her not dependable due to increased absences from work. (Tr. 49; 57).

With regard to her mental health issues, Moore testified that she had been treated for anxiety for the past five or six years and for depression for the last year and a half. (Tr. 58). Her anxiety caused her to feel hot and sweaty, have a racing heartbeat and feel nauseous. (Tr. 58). She testified that she did not know she was depressed until someone told her, as she believed her crying spells were normal as they related to a series of recent deaths in her family. (*Id.*). Moore

4

testified that on her bad days her mental health symptoms interfere with her ability to work, but she did not specify how. (Tr. 59).

With regard to her daily activities, Moore testified that she usually gets up around 8 a.m., takes her medicine, wakes her husband, washes up and has breakfast. (Tr. 64). Then she tries "to do as much as I can around the house on my good days." (*Id.*). She has lunch with her son and when she feels well she crosses the street to visit with her sister. (*Id.*). Other times her sister will come visit her. (Tr. 65).

### 3. *Medical Evidence*

#### a. *Treating Sources*

##### i. *Dr. James Syriac*

Moore was seen by Dr. Syriac on February 22, 2006, for a complete physical. (Tr. 231-35). In her self-report she had no complaints of mental issues and made no mention of taking any medications for mental issues. (Tr. 234). She did report, however, that she was nervous with strangers, had trouble sleeping and relaxing, worried a lot and lost her temper. (Tr. 235). It appears Dr. Syriac conducted a routine psychiatric checklist as part of the physical, diagnosed Moore with anxiety, discontinued Xanax and prescribed Paxil instead. (Tr. 232). Dr. Syriac's office placed a phone call to Moore on May 10, 2006, to follow-up on an abnormal mammogram. (Tr. 230). Moore revealed that she had been under stress lately due to the death of a family member. (*Id.*). Moore was seen again on December 6, 2006, but no discussion was had regarding her anxiety. (Tr. 228-29). When she was seen again over a year later on January 28, 2008, there again was no discussion of her anxiety. (Tr. 226-27). Moore was a no-show for subsequent appointments on September 3, 2008, and March 12, 2009. (Tr. 224-25).

5

ii.      *Dr. Stanley Poleck*

At an initial visit with Dr. Poleck on October 28, 2009, Moore left the office before her scheduled appointment.  (Tr. 298).  At a December 30, 2009 appointment, Moore's chief complaints included a refill on her medications, headache, a check-up, blood in her stool and thirst.  (Tr. 297).  She did not report any mental health issues.  (*Id.*).  Dr. Poleck did not document any mental health assessments, however, he diagnosed Moore with anxiety and refilled her Paxil prescription.  (*Id.*).  Moore was a no-show for an appointment on January 12, 2010.  (Tr. 295).  At an appointment on June 23, 2010, Moore requested medication refills and complained of back pain.  (Tr. 294).  There is no mention in these notes of any mental health issues.  (*Id.*).  Furthermore, it does not appear her Paxil prescription was refilled at this appointment.  (*Id.*).  Moore was a no-show again for an appointment on November 1, 2010.  (Tr. 292).  At an appointment on March 31, 2011, Moore complained of wanting her blood checked and wanting to talk to the doctor.  (Tr. 291).  Although the notes from this appointment are generally illegible, it does not appear that any mental health issues were discussed or diagnosed. (*Id.*).  Furthermore, there is no indication that her Paxil was refilled at this appointment.  (*Id.*).

b.      *Consultative and Non-Examining Sources*

On September 28, 2010, Moore was examined by Dr. Terrance Mills, a psychologist, for the State of Michigan.  She reported that she suffered from back pain, diabetes and high cholesterol and the condition preventing her from working was her back pain.  (Tr. 247).  She denied ever receiving any type of mental health counseling or hospitalization, but that she was currently taking Paxil.  (*Id.*).  She reported not getting along well with others in general and having a poor relationship with her family.  (*Id.*).  She also reported having few friends.  (*Id.*). However, she reported getting along well with coworkers, and the examiner rated her

6

interactions with him as "fair" and "generally positive." (*Id.*; Tr. 248).

Dr. Mills found Moore's responses to be reality-based, her motor activity to be slow and her self-esteem to be low. (Tr. 248). She expressed fair insight into her condition. (*Id.*). Her expressive language skills were good and her responses spontaneous. (*Id.*). She reported a long history of forgetfulness. (*Id.*). She denied any hallucinations, delusions or suicidal behavior. (*Id.*). She reported a limited appetite and poor sleep habits due to her back pain. (*Id.*). She presented with appropriate affect and reported an overall positive mood, although with episodes of sadness and irritability. (*Id.*). Dr. Mills found Moore to be oriented to person, place and time, able to remember six numbers forward and three backward and remember three of three items after three minutes. (*Id.*). She could name the current and the last president, listed correctly four of five large cities, had a limited recollection of current events, was able to subtract sevens from 100 and perform one digit math equations. (*Id.*). She was further able to correctly interpret one of two proverbs and make accurate comparisons between a tree and a bush. (*Id.*). Her judgment of hypothetical situations was appropriate. (Tr. 249). Dr. Mills assessed Moore with depressive disorder NOS (not otherwise specified) and issued her a global assessment of functioning ("GAF") score of 50.[1] (*Id.*). He issued her a guarded prognosis. (*Id.*). In his medical source statement, Dr. Mills reported that he "felt that the claimant's ability to understand, retain, and follow simple instructions and perform basic routine tasks appears to be mildly impaired. Her ability to appropriately interact with coworkers, supervisors, and the public appears to be mildly

---

[1] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx. 433, 436 n.1 (6th Cir. 2012) (citations omitted).

impaired." (*Id.*).  His assessment was limited to his "specialty of psychology." (*Id.*).  He further found Moore unable to manage any benefit funds.  (*Id.*).

On December 8, 2010, Dr. James Tripp evaluated Moore's record to date and made an assessment of her mental limitations for the initial disability adjudicator.  (Tr. 74-83).  In his "Disability Determination Explanation" ("DDE") he concluded that she had mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation.  (Tr. 77).  He further found that she was moderately limited in her ability to understand, remember and carry out detailed instructions.  (Tr. 80).  She was also moderately limited in her ability to interact appropriately with the general public, and to respond appropriately to changes in the work setting.  (Tr. 81).  However, Dr. Tripp found Moore not significantly limited in her ability to understand, remember and carry out short and simple instructions, in her ability to maintain attention and concentration for extended periods, or in her ability "to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (Tr. 80).  In his explanation, Dr. Tripp stated that Moore's reports of her activities of daily living were "partially credible for mental impairment because the claimant and third party cited li[]mitations of completing tasks and getting along with others.  Abilities in all other areas are affected by physical pain.  Severity of limitation to functioning is not fully supported by the evidence in file."  (Tr. 81).

On September 17, 2011, approximately one month after the administrative hearing, Moore was examined by Dr. Atul Shah for the State of Michigan.  Moore reported that she no longer drove due to back pain, depression and anxiety.  (Tr. 311).  She reported that she had been

8

sad and depressed for a long time but that her depression had worsened in the last two to three years.  (*Id.*).  Her current depression is "everyday all the time lasting for weeks even months." (*Id.*).  She reported staying by herself and "crying for no reason," being isolative with disturbed memory and sleep.  (*Id.*).  She reported no motivation and some frequent suicidal thoughts with one attempt in February of 2011.  She was never hospitalized for mental issues, however, and denied any hallucinations.  (*Id.*).  She reported feeling that others were out to get her and that she had a "snappy mood and gets frustrated easily," although Dr. Shah did not appreciate any mood swings during the interview.  (*Id.*).  Moore also reported being forgetful but at the same time said she "can remember reasonably well."  (*Id.*).  She reported panic attacks that had worsened in the last three to four years, occurring 3-4 times a week for between 4 and 10 minutes at a time without warning.  (*Id.*).  She reported that the car, grocery stores and unfriendly people made her anxiety worse.  (*Id.*).  She reported that her physical conditions contributed to her depression and anxiety.  (*Id.*).

Moore reported that she had been treated by a psychiatrist from the age of 6 or 7 until she was a teenager for behavioral problems and anxiety.  (Tr. 312).  She reported being prescribed Paxil and also taking Xanax "for the last 2 years or more with some relief."  (*Id.*).[2]  She reported fair contact with her family, no hobbies and no future plans.  (*Id.*).  She reported grieving for the recent deaths of her father and best friend.  (*Id.*).

Upon observation, Dr. Shah noted that Moore presented fairly dressed and groomed with decreased eye contact and stooped posture.  (*Id.*).  She had frequent crying spells.  (*Id.*).  She had good contact with reality, fair insight, decreased motivation, a tendency to minimize symptoms

---

[2] There is no evidence in the record supporting Moore's report of continued use of Xanax for anxiety, as the only reference in the treating physicians' notes is in her initial consultation with Dr. Syriac where he discontinued her Xanax prescription and prescribed Paxil instead.  (Tr. 232).

and low self-esteem.  (*Id.*).  Her stream of mental activity was spontaneous, slow, circumstantial, and organized, with whispering speech and no pressure of speech.  (*Id.*).  Her emotional reaction was depressed, anxious, but friendly.  (*Id.*).  Her affect was blunt.  (*Id.*).

Dr. Shah found Moore to be oriented to time, person and place, able to recall three numbers forward, two numbers backward and two of three objects after a delay, able to name the past three presidents, four of five large cities and some famous people.  (*Id.*).  She could also perform simple math calculations.  (Tr. 313).  She correctly interpreted one of two proverbs, made cursory comparisons between a tree and a bush and correctly adjudged one hypothetical situation.  (*Id.*).  Dr. Shah concluded that, "Based on today's examination, the claimant has moderate to severe functional impairment for occupational activity because of major depressive disorder and panic disorder, which interferes with her ability to interact with the public, coworkers and family members."  (*Id.*).  He diagnosed her with major depressive disorder recurrent in partial remission and panic disorder, chronic.  (*Id.*).  He assessed her a GAF score of 60 and issued a fair prognosis, but found her unable to manage benefit funds.  (*Id.*).

In a medical source statement, Dr. Shah found that Moore had moderate difficulty understanding, remembering and carrying out simple and complex instructions, and making judgments on complex work-related decisions.  (Tr. 314).  He also found she had moderate difficulty interacting appropriately with coworkers, supervisors and the public, and responding appropriately to usual work situations and routine changes.  (Tr. 315).  "Moderate" was defined in the source statement form instructions as "more than a slight limitation in this area but the individual is still able to function satisfactorily."  (Tr. 314).  A marked limitation is defined as "a substantial loss in the ability to effectively function."  (*Id.*).

10

4.      *Vocational Expert's Testimony*

VE James Fuller testified at the hearing.  With regard to Moore's past work, the VE classified her previous jobs as varying in skill between unskilled and skilled, and varying in exertion level between light and medium.  (Tr. 68-69).  The ALJ asked the VE to assume Moore could not lift more than 10 pounds, could not be on her feet all day, and asked him to elaborate on some sedentary service jobs in existence that a person with these limitations could perform. (Tr. 69).  The VE testified that such a person could perform the jobs of information clerk (3,000 jobs in the region), and surveillance system monitor (5,000 jobs).  (Tr. 69-70).  The ALJ then asked the VE whether all the jobs mentioned were "listed as unskilled, sedentary."  (Tr. 70).  The VE answered in the affirmative.  (*Id.*).  The ALJ and the VE then had the following exchange regarding Moore's mental limitations:

> Q:  …Okay, well we might as well cover – let's see here.  We might as well cover the depression she claims – cries quite a bit, being treated by her physician.  If the depression is severe, I assume she's not employable, right?
>
> A:  Yes.
>
> Q:  Less than that is a variable as far as moderate to mild, it depends.
>
> A:  Correct.

(Tr. 71).  There was no further discussion regarding Moore's mental limitations.

## C.      Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

11

less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueunieman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.    The ALJ's Findings

Following the five-step sequential analysis, the ALJ determined that Moore was not disabled under the Act.  At Step One, he determined that Moore had not engaged in substantial

12

gainful activity since her alleged onset date of June 1, 2008.  (Tr. 10).  At Step Two he found the following severe impairments: "depressive and panic disorders; history of cannabis and alcohol abuse; isthmic grade II spondylolisthesis of L5 on S1; lumbar degenerative disc disease; and type II non-insulin dependent diabetes mellitus."  (*Id.*).  At Step Three he evaluated Moore's severe conditions against various listings and found that her impairments, either alone or in combination did not meet or equal any listed impairment.  (Tr. 11-13).  In making this assessment, the ALJ found that, with regard to her mental limitations, Moore had "mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace ("CPP")[3], and no episodes of decompensation, each of extended duration."  (Tr. 12).  The ALJ gave "significant weight" to the evaluations of Drs. Mills, Tripp and Shah.  (Tr. 15-17).

Next, the ALJ assessed Moore's RFC.  (Tr. 13).  He found her capable of performing "unskilled, sedentary work."  (*Id.*).  With regard to the moderate CPP limitation, he explained that while "[t]here are no allegations of significant memory or concentration deficits, [ ] the undersigned recognizes that the combination of the claimant's impairments and medications may affect her ability to maintain attention and concentration required for detailed tasks.  As such, the undersigned generously limited the claimant to unskilled work.  (Tr. 18).  At Step Four he determined that, as a result of her restrictions, Moore was unable to return to her past relevant work.  (Tr. 18).  Finally, at Step Five, the ALJ concluded that, based on Moore's age, education, vocational experience and RFC, along with VE testimony, a significant number of jobs existed in the national economy that she could perform.  (Tr. 18).  Thus, the ALJ concluded that she was

---

[3] Four pages later in his decision, the ALJ wrote that: "There are no allegations of significant memory or concentration deficits, but the undersigned recognizes that the combination of the claimant's impairments and medications may affect her ability to maintain attention and concentration required for detailed tasks."  (Tr. 17).

not under a disability as defined by the Act.  (Tr. 19).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the

14

Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F.     Analysis

Moore makes two arguments on appeal.  First, she argues that the ALJ erred by determining an RFC that did not account for all of her mental limitations.  Second, she argues that the ALJ erred in relying on VE testimony that was based on a hypothetical that did not accurately reflect all of her mental limitations.  Specifically, she argues that the ALJ failed to account for her limitations in: (1) interacting with co-workers, supervisors and the general public; (2) concentration, persistence and pace; and (3) the ability to respond appropriately to changes in the work setting.  The court agrees that remand is appropriate.

#### 1.     The ALJ's Inconsistent Treatment of the Consulting Physicians' Evaluations

The ALJ stated that he gave equally "significant" weight to the opinions of three different consulting physicians, each of whom rendered somewhat differing opinions of Moore's limitations.  Despite having given each opinion significant weight, the ALJ failed to distinguish each opinion or explain how he ultimately determined which limitations to include, and not

15

include, in his RFC and hypothetical questions to the VE.  For example, Drs. Mills and Tripp assessed Moore with only a mild restriction in social functioning, which is the same level of restriction the ALJ ultimately concluded was appropriate.  However, the ALJ also gave the same "significant weight" to the opinion of Dr. Shah who found that Moore had "moderate to severe functional impairment for occupational activity because of major depressive disorder and panic disorder, which interferes with her ability to interact with the public, coworkers and family members."  (Tr. 314).  In fact, the ALJ specifically quotes this portion of Dr. Shah's evaluation in assigning significant weight his opinions.  (Tr. 16).  The ALJ further noted that he gave such weight to this opinion based on Dr. Shah's "well-trained observations, a thorough examination of the claimant, and [because it] is otherwise consistent with the remaining medical evidence." (*Id.*).   Despite  this  finding,  the  ALJ  assessed  only  a  mild  limitation  in  social  functioning, apparently based on the fact that Moore's symptoms were controlled by medication, she had never had formal mental health treatment or hospitalization and because "she related a fair relationship with her family to the consultative examiners, but admitted she got along well with co-workers.  During the hearing, she testified she lives with her two sons and often visits her sister."  (Tr. 17).  The ALJ did not include any restrictions in his RFC assessment based on this limitation.  Thus, although the ALJ purportedly gave Dr. Shah's evaluation significant weight as being  consistent  with  the  medical  evidence,  it  appears  that  he  ultimately,  and  without explanation, rejected that evaluation in favor of the evaluations of Drs. Tripp and Mills when assessing Moore with only a mild social functioning limitation.[4]

---

[4] It should be noted that since Dr. Shah's evaluation was conducted *after* the administrative hearing, the ALJ could not have included any of his limitations into a hypothetical.  *See e.g. Bowers v. Astrue*, 271 Fed. Appx. 731, 733 (10th Cir. 2008) ("As a basic premise, we can safely say that a hypothetical is inherently suspect if crafted before the claimant's limitations are reasonably determined").  The 10th Circuit, in *Bowers*, went on to acknowledge times when

16

The same is true regarding Dr. Shah's evaluation of Moore's CPP limitation.  Both Dr. Shah and Dr. Tripp found that Moore had a moderate CPP limitation.  The ALJ agreed, assessing her with such a limitation.  (Tr. 12).  However, the ALJ's explanation for that assessment, and his limitation of Moore to unskilled work, comports solely with Dr. Tripp's conclusion that Moore's only moderate impairment in this area was in her ability to understand, remember and carry out ***detailed instructions***, while flatly contradicting Dr. Shah's evaluation that Moore was also moderately limited in her ability to understand, remember and carry out ***simple instructions***.  *See supra* at 8, 10.

As noted above, the ALJ in his decision stated that, despite a lack of evidence of memory or concentration deficits, a "combination of the claimant's impairments and medications may affect her ability to maintain attention and concentration required for detailed tasks."  (Tr. 17).  "Detailed tasks" are not tasks generally found in unskilled work, which has been defined as being "limited to understanding, remembering and carrying out only simple instructions and requiring little, if any judgment."  *Latarte v. Comm'r of Soc. Sec.*, No. 08-13022, 2009 U.S. Dist. LEXIS 131437 at *3 (E.D. Mich. Feb. 24, 2009) *adopted by* 2009 U.S. Dist. LEXIS 33265, 2009 WL 1044836 (E.D. Mich. Apr. 20, 2009); *see also* Soc. Sec. Ruling 85-15, 1985 SSR LEXIS 20 at *11 (1985) (basic mental demands of unskilled work include ability to "understand, carry out, and remember simple instructions").  However, the ALJ did not explain why, despite giving Dr. Shah's evaluation of Moore the same "significant" weight as Dr. Tripp's, he ultimately rejected Shah's evaluation that Moore was moderately limited with respect to her ability to understand, remember and carry out ***simple instructions***.  Furthermore, as explained in *Bowers*, impairment

---

subsequent evaluation would confirm a hypothetical's validity.  *Id.*  However, here, where the supposedly "consistent" evaluation did not confirm the hypothetical's validity, but appears to have gone beyond the restriction of merely unskilled work, and where the ALJ specifically gave that evaluation significant weight, the court cannot say that this exception applies.

17

in the area of detailed instructions or tasks may still have an effect on the base of unskilled sedentary work.  *See* 217 Fed. Appx. at 734.

Similarly, the ALJ erred in not addressing the consulting physicians' assessment of Moore's ability to respond appropriately to changes in the work setting.  Both Drs. Tripp and Shah found that Moore was moderately limited in her ability to respond appropriately to changes in the workplace setting.  (Tr. 81; 315).[5]  Despite granting these opinions significant weight, the ALJ not only included no restrictions based on this limitation either in his RFC assessment or his hypothetical questions to the VE, but he failed to explain why he was rejecting these portions of the consulting physicians' evaluations.

The ALJ's limitation, in his RFC and hypotheticals, of Moore to only unskilled work does nothing to clarify his decision, as "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilit[y] to . . . deal with changes in a routine work setting," (SSR 85-15, 1985 SSR LEXIS 20 at *11 (1985)), and "[a] less than substantial loss of the ability to perform [this] basic work activit[y] *may or may not* significantly erode the unskilled sedentary occupational base."  SSR 96-6, 1996 SSR LEXIS 6 at *26 (1996) (emphasis added); *see also Bowers*, 271 Fed. Appx. at 733-34 (holding that moderate impairment in responding appropriately to changes in routine can affect base of unskilled sedentary work because such an ability is generally required for unskilled work).

The court recognizes that, by digging into the details of each doctor's evaluation and meticulously comparing each intricacy with various portions of the ALJ's decision, it might be possible to cobble together, or to presume, some *post hoc* explanation for the ALJ's inconsistent application of the consulting physicians' evaluations.  However, this court's job is not to create a

---

[5] Dr. Mills did not opine on Moore's ability in this area one way or the other.  (Tr. 249).

rationalization for the ALJ's conclusion, but to evaluate whether the reasons cited by the ALJ constitute substantial evidence.  *See S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947) (a reviewing court must judge propriety of agency action "soley by the grounds invoked by the agency"); *see also Hunter v. Astrue*, No. 09-2790, 2011 U.S. Dist. LEXIS 148585 at *11 (N.D. Ohio Dec. 20, 2011) (remanding case where Commissioner attempted to rationalize on appeal insufficient examination of evidence by ALJ).  Because the ALJ's opinion is internally inconsistent, confusing, and lacking in explanation on these points, and because the hypothetical questions asked of the VE do not clarify the ALJ's reasoning, this case should be remanded back to the ALJ for explanations as to the differing application of each of the consulting doctor's opinions, despite giving all the same weight, and to the ultimate conclusion that a restriction to simply "unskilled work" sufficiently accounts for all of Moore's credible limitations.[6]

  2.    *Harmless Error*

The Commissioner argues that, even if the ALJ erred in failing to incorporate these

---

[6] In this regard, the court notes that courts in this Circuit have gone both ways on the question of whether an ALJ errs when he or she does not incorporate a moderate CPP limitation into questions posed to the VE.  The cases generally fall into two categories – those where a medical expert has found a moderate limitation in CPP, and those where the ALJ specifically finds such a limitation, whether or not there was such a finding by a medical expert. *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 U.S. Dist. LEXIS 136810 at *21-28, *23 n.3, 2011 WL 6000714 (E.D. Mich. Aug. 30, 2011) *adopted by* 2011 U.S. Dist. LEXIS 136052, 2011 WL 6000701 (Nov. 28, 2011) (collecting cases).  In the latter class of cases, in which this case currently falls, the predominant view has been to require the ALJ to incorporate the CPP limitation, in some way or form, into the hypothetical questions asked of the VE.  *Id.* at *23-24 (collecting cases).  To this court's knowledge, no court in this district has found that a limitation in a hypothetical to merely "unskilled work," without more clarity, is sufficient to account for a moderate CPP impairment. *See e.g. Cwik v. Comm'r of Soc. Sec.*, No. 10-15121, 2012 U.S. Dist. LEXIS 41529 at * 8 (E.D. Mich. Mar. 27, 2012) (collecting cases and finding no cases that support use of term "unskilled" alone supports a moderate CPP limitation); *Allen v. Comm'r of Soc. Sec.*, No. 09-13503, 2010 U.S. Dist. LEXIS 103588 at *16 (E.D. Mich. June 2, 2010) *adopted by*  2010 U.S. Dist. LEXIS 103586 (E.D. Mich. Sept. 30, 2010) (same).  Therefore, if on remand the ALJ continues to assess a moderate CPP limitation, he should incorporate more specific language in his RFC and/or hypothetical question than just limiting Moore to "unskilled" work.

limitations into his hypothetical questions, at best the error was harmless.  "When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game."  *Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 171, 173 (6th Cir. 2004).

The court acknowledges that upon review of the record, the evidence of Moore's mental impairments appears fairly thin.  However, as discussed above, it is not this court's job "to review the evidence *de novo*, weigh the evidence, or make credibility determinations to make findings of fact where the ALJ failed to do so." *Cobb v. Comm'r of Soc. Sec.*, No 10-10023, 2011 U.S. Dist. LEXIS 29414 at *10 (E.D. Mich. March 22, 2011) (finding that, "[b]ecause the ALJ failed to clearly define the Plaintiff's nonexertional limitations, it is improper for the Court to attempt to do so").  Here, the ALJ's failure to distinguish between the weight given to Dr. Shah's evaluation as compared to the evaluations of Drs. Tripp and Mills, coupled with his failure to either incorporate Dr. Shah's evaluation or any of its components into his decision, or explain his reasons for not doing so, leaves this court with no ability to properly assess the relevant substantial evidence question.   Under these circumstances, the court cannot say the ALJ committed mere "harmless error" by not incorporating any limitations based on Dr. Shah's evaluation into his RFC, not recalling the VE to pose a more specific hypothetical based on Dr. Shah's evaluation, or by merely limiting Moore to "unskilled work."

The court cannot unequivocally determine what restrictions the ALJ would ultimately impose in a hypothetical that properly took Dr. Shah's evaluation into account, and the court lacks the vocational knowledge to say what effect the inclusion of such limitations would have on the occupational base of unskilled, sedentary work.   Thus, the court cannot say that remanding this case back to the ALJ for either a clearer rationale for his decision or more

20

specific VE testimony based on a proper hypothetical would be an "idle and useless formality." Rather, it may ultimately result in the exclusion of certain categories of work previously identified by the VE as being available to Moore.  Therefore, the court "declines to use the harmless error standard as an invitation to rewrite a deficient ALJ decision."  *Cobb,* 2011 U.S. Dist. LEXIS 29414 at *13 .  Instead, it recommends remand for further proceedings consistent with this report and recommendation.

## III.    CONCLUSION

For the foregoing reasons, the court RECOMMENDS that Moore's Motion for Summary Judgment [13] be GRANTED, the Commissioner's Motion [16] be DENIED and this case be REVERSED AND REMANDED for further proceedings consistent with this report and recommendation.

Dated: December 28, 2012                          s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                  United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991);

21

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to

E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

<u>**CERTIFICATE OF SERVICE**</u>

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 28, 2012.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager